Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael J. Ellis
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 07, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

   Plaintiff,

v.

ANTOINNE JAMES HOLMES,

   Defendant.

Case No. 2:21-CR-00091-TOR-1

Plea Agreement

Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael J. Ellis, Assistant United States Attorney for the Eastern District of Washington, and Antoinne James Holmes ("Defendant"), both individually and by and through Defendant's counsel, Douglas D. Phelps, agree to the following Plea Agreement:

1)  <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant, Antoinne James Holmes, agrees to plead guilty to Count 1 of the Indictment filed on July 20, 2021, charging Defendant with Conspiracy to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846. Defendant understands that this charge is a Class C Felony, which carries a maximum penalty of not more than twenty (20) years imprisonment; a fine not to exceed $1,000,000; a term of supervised release of not less than three (3) years of supervised release, nor more than life; restitution; and a $100 special penalty assessment.

Defendant understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2)   Denial of Federal Benefits:

Defendant understands that by entering this plea of guilty Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3)   The Court is Not a Party to the Agreement:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter. Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

Plea Agreement - 2

4) <u>Effect on Immigration Status</u>:

Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a citizen of the United States.

Under federal law, a broad range of crimes are removable offenses, including the offense to which Defendant is pleading guilty. Indeed, because Defendant is pleading guilty to Conspiracy to Distribute Fentanyl, removal is presumptively mandatory.

Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that while deportation and/or removal appears to be a virtual certainty, no one, including Defendant's attorney or the district court, can predict with absolute certainty the effect of Defendant's conviction on Defendant's immigration status.

Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's plea may entail, even if automatic removal from the United States is a virtual certainty.

5) <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

    a) The right to a jury trial;

    b) The right to see, hear and question the witnesses;

    c) The right to remain silent at trial;

    d) The right to testify at trial; and

    e) The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney. Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

6) <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict Defendant of Conspiracy to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), 846, the United States would have to prove beyond a reasonable doubt the following elements:

*First*, beginning on a date unknown, but by on or about April 1, 2020, and continuing until on or about April 21, 2021, in the Eastern District of Washington and elsewhere Defendant, Antoinne James Holmes, entered into an agreement with one or more persons to commit the crime of distribution of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperdinyl]propanamide (a/k/a "Fentanyl"); and

*Second*, Defendant became a member of the conspiracy knowing of at least one if its objects and intending to help accomplish it.

7) <u>Factual Basis and Statement of Facts</u>:

The United States and Defendant, Antoinne James Holmes, stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Beginning on a date unknown, but by on or about April 1, 2020, Defendant began distributing Fentanyl laced pills, commonly known as "Mexi-Blues," to persons in the Eastern District of Washington, Idaho ~~and elsewhere~~. Defendant utilized applications on his cellular telephone, such as Snapchat and Venmo, to facilitate and accept payment for his distribution of Fentanyl laced pills as well as other controlled substances. Further, Defendant enlisted his girlfriend, co-defendant Reigan Rae Allen,

Plea Agreement - 4

to assist in his enterprise, primarily by maintaining a drug ledger documenting Defendant's drug trafficking transactions.

On May 14, 2020, Defendant and Allen were found to be in possession of Fentanyl laced pills, as well as a firearm and a drug ledger written by Allen, by a Spokane County Sheriff's Office deputy in Spokane County, Washington. The drug ledger contained lists, separated by day, of various transactions, including the recipient's name, the type of controlled substance purchased, and the amount of money that changed hands. Defendant's cellular telephone was also seized and contained numerous messages documenting Defendant's sale of controlled substances.

On August 28, 2020, Defendant and Allen distributed Fentanyl laced pills to two teenagers in Bonner County, Idaho, one of whom, G.D., died later that day of a Fentanyl overdose. Defendant was identified by phone records as having communicated with the teenagers about the controlled substance transaction prior to the sale. Further, Defendant's vehicle was tracked using GPS technology and found to have been at the location of the sale at the time when the surviving teenager told investigators the sale had occurred. The transaction with G.D., and G.D.'s death, were subsequently charged in the District of Idaho in Case No. 2:21-cr-00118-BLW. Defendant admits that the teenager would not have died but for the Fentanyl distributed by Defendant.

On November 16, 2020, Defendant possessed Fentanyl laced pills with intent to distribute and did distribute to Allen. Defendant and Allen used Fentanyl laced pills in the presence of Allen's infant, C.A., who shortly thereafter suffered a Fentanyl overdose. C.A. had to be quickly transported to a hospital in Spokane County where C.A. was administered Narcan. Later that day, while driving back to Pend Oreille County from the hospital in Spokane County, Defendant and Allen were found by a City of Newport police officer to be in possession of 200 Fentanyl laced pills, as well as another firearm.

When subsequently interviewed by law enforcement on April 21, 2021, Defendant admitted to distributing controlled substances, to include Fentanyl laced pills made to look like Oxycodone, in both Eastern Washington and Northern Idaho.

Defendant, therefore, admits that, in the Eastern District of Washington, he entered into an agreement with Allen and other persons to distribute controlled substances, in particular Fentanyl laced pills. Defendant personally distributed Fentanyl laced pills to persons in Eastern Washington and Northern Idaho, to include D.K.

8) <u>The United States Agrees</u>:

a) <u>Dismissal(s)</u>:

At the time of sentencing, the United States agrees to move to dismiss Counts 2, 3, 4, and 5 of the Indictment.

b) <u>Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless Defendant breaches this Plea Agreement any time before or after sentencing.

9) <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG") are applicable to this case and that the Court will determine Defendant's applicable sentencing guideline range at the time of sentencing. Defendant also understands, however, that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guideline range is advisory and that the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a) and to impose a reasonable sentence.

//
//

Plea Agreement - 6

a) <u>Base Offense Level</u>:

The United States and Defendant stipulate and agree that the base offense level is thirty-eight (38), as Defendant has been convicted under 21 U.S.C. § 841(b)(1)(C) and death or serious bodily injury resulted from the use of the substance. USSG §2D1.1(a)(2).

b) <u>Specific Offense Characteristics</u>:

The United States and Defendant make no agreement concerning whether any specific offense characteristics apply. Other than as set forth in this Plea Agreement, the United States and Defendant are free to argue how the applicable sentencing guideline range is to be calculated.

c) <u>Acceptance of Responsibility</u>:

If Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than March 10, 2022, the United States will move for a three (3) level downward adjustment in the offense level for Defendant's timely acceptance of responsibility, pursuant to USSG §3E1.1(a) and (b).

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

d) <u>Criminal History</u>:

The United States and Defendant understand that Defendant's criminal history computation is tentative and that ultimately Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and Defendant have made no agreement and make no representations as

Plea Agreement - 7

to the criminal history category, which shall be determined after the Presentence Investigation Report is completed.

10) <u>Incarceration</u>:

The United States and Defendant are free to recommend any term of incarceration the party deems appropriate. Further, the United States agrees to recommend that any sentence of incarceration imposed by the Court be run concurrently with the sentence imposed by the United States District Court for the District of Idaho in *United States v. Antoinne James Holmes*, Case No. 2:21-cr-00118-BLW.

11) <u>Criminal Fine</u>:

The United States and Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

12) <u>Supervised Release</u>:

The United States and Defendant agree to recommend that the Court impose a five (5) year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

a) that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

b) that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

13) <u>Restitution</u>:

Pursuant to 18 U.S.C. § 3663(a)(3), in exchange for the United States dismissing Counts 2, 3, 4, and 5 and/or agreeing to not bring additional charges, Defendant expressly and voluntarily agrees to pay restitution to: (1) C.A. and (2) D.K. The United States and Defendant also hereby stipulate and agree that the Court shall order full restitution, as appropriate, to any entity, organization, insurance company, individual(s), and/or medical provider who provided medical services, funds related to the treatment, or funeral expenses of the victims.

Plea Agreement - 8

With respect to restitution, the United States and Defendant agree to the following:

a. Restitution Amount and Interest

The United States and Defendant hereby stipulate and agree that, pursuant to 18 U.S.C. §§ 3663(a)(3) and 3664, the Court should order restitution in an amount to be determined at or before sentencing. Defendant agrees that, at a minimum, C.A. and D.K. qualify as victims to whom restitution is owed. The United States and Defendant agree that interest on this restitution amount, if any, should be waived.

b. Payments

To the extent that the Court orders restitution, the United States and Defendant agree that the Court will set a restitution payment schedule based on his financial circumstances. *See* 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of his net monthly income towards his restitution obligation.

c. Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies. If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. *See* 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant also understands the United States may, notwithstanding the Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets. *See* 18 U.S.C. §§ 3572, 3613, 3664(m). Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until a fine or restitution order is paid in full, Defendant agrees fully to disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, parent, nominee, or third party. Until

such time as the fine or restitution order is paid in full, Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

d. Notifications and Waivers

Defendant agrees to notify the Court and the United States of any material change in his economic circumstances (e.g., inheritances, monetary gifts, changed employment, or income increases) that might affect his ability to pay restitution. *See* 18 U.S.C. § 3664(k). This obligation ceases when the restitution is paid-in-full.

Defendant agrees to notify the United States of any address change within 30 days of that change. *See* 18 U.S.C. § 3612(b)(1)(F). This obligation ceases when the restitution is paid-in-full.

Defendant acknowledges that the Court's decision regarding restitution is final and non-appealable. Neither party may withdraw from the Plea Agreement based on the ultimate amount or restitution ordered.

14) Abandonment:

Defendant agrees to abandon the following listed assets to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF):

a. a Glock, model 17 Gen5, 9mm caliber firearm, bearing serial number BGTA150; and

b. an American Tactical, model Omni Hybrid, multiple caliber (chambered in .300 caliber), AR15 style pistol, bearing serial number NS253815.

Defendant agrees to take all steps as requested by the United States and the ATF to effectuate the abandonment of the above-listed assets to the ATF and hereby agrees to execute any and all forms and pleadings necessary to effectuate such abandonment. Defendant consents to the disposal, including destruction, of the assets.

Defendant waives any right he might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the ATF might take, in its sole discretion, to carry out the abandonment, disposition, and

Plea Agreement - 10

destruction of the assets. Defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of assets, including any such claim for attorney fees and litigation costs.

15) <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16) <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17) <u>Additional Violations of Law Can Void Plea Agreement</u>:

Defendant and the United States agree that the United States may at its option and upon written notice to Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, Defendant is charged or convicted of any criminal offense whatsoever or if Defendant tests positive for any controlled substance.

18) <u>Appellate Waiver</u>:

In return for the concessions that the United States has made in this Plea Agreement, Defendant hereby expressly waives his right to appeal his conviction and the sentence the Court imposes, including any restitution order, special penalty assessments, and order of supervised release. Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based upon ineffective assistance of counsel based on information not now known by Defendant and which,

Plea Agreement - 11

in the exercise of due diligence, could not be known by Defendant by the time the Court imposes the sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255.

If Defendant believes that the United States has not fulfilled its obligations under this Plea Agreement, Defendant will object at the time of sentencing; further objections are waived.

19)    Waiver of Attorney Fees and Costs:

Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

20)    Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and Defendant agree

//
//
//
//
//

that this agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_/s/ Michael Ellis_ MJE    4-7-2022
                          2-8-2022
Michael J. Ellis                Date
Assistant United States Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

x _/s/ Antoinne_ AJH          4/7/2022
                              2/6/2022
Antoinne James Holmes         Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to
//

Plea Agreement - 13

1  plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court
2  should not accept Defendant's plea of guilty.        4/7/2022

3  _____        _2/6/2022_
4  Douglas D. Phelps                          Date
   Attorney for Defendant

Plea Agreement - 14